WAYMOND M. BROWN, Judge. 11 After we dismissed an earlier appeal for lack of a final order, Mercy Health System of Northwest Arkansas brings this appeal from a judgment entered in favor of appellee Dr. Lisa McGraw in the sum of $350,000.[1] For reversal, Mercy argues that Dr. McGraw’s contributory negligence bars her recovery because she is claiming only economic damages; that Mercy is entitled to judgment notwithstanding the verdict on Dr. McGraw’s negligence and breach-of-fiduciary-duty claims because it owed her no duty; and that Mercy is entitled to judgment notwithstanding the verdict on Dr. McGraw’s promissory estop-pel claim. Finding no error, we affirm. This appeal has its origin in a medical-negligence case filed against Dr. McGraw.[2] After |2a default judgment in the amount of $500,000 was entered against Dr. McGraw in the underlying action, she filed suit against Mercy, alleging causes of action for negligence, promissory estoppel, violation of the deceptive trade practices act, breach of fiduciary duty, and indemnification. She also sought punitive damages. The basis for Dr. McGraw’s suit was her assertion that Cynthia Bosley, the office manager at Mercy’s Pea Ridge clinic, and Ann Spencer, the office coordinator at the clinic, assumed the duty to respond to the complaint in the underlying action. Mercy denied that it owed any duty to Dr. McGraw. It also denied that Bosley and Spencer, while employees of Mercy, had authority to assume any obligation on its behalf. Mercy filed a motion for summary judgment, alleging that, as a matter of law, Mercy did not owe Dr. McGraw any duty to handle the lawsuit or report the matter to her insurance carrier. Mercy also asserted that Dr. McGraw had breached her contractual duties to report any lawsuits to Mercy within ten days of receipt of a summons and to report any lawsuits to her insurer. The court granted the motion as to the deceptive-trade-practices act and the punitive-damages claims, but denied the motion as to Dr. McGraw’s claims for negligence, promissory estoppel, breach of fiduciary duty, and indemnification. The case was tried before a jury over two days in May 2011. At the conclusion of Dr. McGraw’s proof, Mercy moved for a directed verdict on each of her claims. The circuit court denied the motion. Dr. McGraw took a nonsuit on her claim for indemnification. Mercy renewed its motion for directed verdict at the close of all of the proof. The court again denied the motion. The case was submitted to the jury on interrogatories: | INTERROGATORY NO. 1: Do you find from a preponderance of the evidence that Cynthia Bosley made an oral promise to plaintiff Dr. Lisa McGraw that the lawsuit filed by Scott and Liza-beth Jones would be taken care of by Mercy Health System of Northwest Arkansas? ANSWER: yes. The interrogatory was signed by the jury foreperson. INTERROGATORY NO. 2: Do you find from a preponderance of the evidence that defendant Mercy Health System of Northwest Arkansas held out Cynthia Bosley as having authority to bind it to an oral promise to plaintiff Dr. Lisa McGraw that the lawsuit filed by Scott and Lizabeth Jones would be taken care of by Mercy Health System of Northwest Arkansas? ANSWER: yes. The interrogatory was signed by the jury foreperson. INTERROGATORY NO. 3: Do you find from a preponderance of the evidence that Dr. Lisa McGraw has proven her claim for negligence? ANSWER: yes. The interrogatory was signed by the jury foreperson. INTERROGATORY NO. 4: Do you find from a preponderance of the evidence that Dr. Lisa McGraw has proven her claim for promissory estoppel? ANSWER: yes. This interrogatory was also signed by the jury foreperson. INTERROGATORY NO. 5: Do you find from a preponderance of the evidence that Dr. Lisa McGraw has proven her claim for breach of fiduciary duty? ANSWER: yes. This interrogatory was signed by the jury foreperson. INTERROGATORY NO. 6: Do you find from a preponderance of the evidence that there was fault on the part of Dr. Lisa McGraw that was a proximate cause of any damages she sustained as a result of the lawsuit filed against her by Scott and Lizabeth Jones? ANSWER: yes. This interrogatory was signed by the jury foreperson. INTERROGATORY NO. 7: Using 100% to represent the total responsibility for the damages proximately caused the fault by both parties, apportion the responsibility between the parties. ANSWER: 30% Dr. Lisa McGraw; 70% Mercy Health System of Northwest Arkansas.[3] DJudgment was entered on May 24, 2011, awarding Dr. McGraw $350,000. On June 7, 2011, Mercy filed a motion for judgment notwithstanding the verdict, arguing that the jury’s findings that Dr. McGraw was negligent and 30% at fault served to bar all of her claims. Dr. McGraw filed her response to the motion. The circuit court entered an order on July 22, 2011, stating that Mercy’s motion was deemed denied as of July 6, 2011. Mercy attempted to appeal to this court. However, we dismissed the appeal for lack of a final order on January 30, 2013.[4] The specific defect was that Dr. McGraw had taken a nonsuit as to her indemnification claim, but no order had been entered dismissing the claim.[5] On February 5, 2013, the circuit court entered an order dismissing the unresolved claim with prejudice. Mercy filed its notice of appeal on February 26, 2013. Mercy first argues that the jury’s finding that Dr. McGraw was 30% negligent precludes her recovery. Mercy’s argument is that the common law doctrine of contributory negligence applies to bar all of Dr. McGraw’s claims because the supreme court has held that comparative fault does not apply in situations where a party seeks only economic damages, as Dr. McGraw does in this ease.[6] For her part, Dr. McGraw argues that the issue is not preserved for our | r,review because Mercy did not object to the jury’s being instructed on comparative fault and did not raise this issue until its posttrial motion for judgment notwithstanding the verdict. We agree that the issue is not preserved. Assuming arguendo that Mercy’s answer asserting that “any damages sustained by [Dr. McGraw] were proximately caused by her own negligence” was sufficient to raise the issue of contributory negligence, there was no further mention of it until Mercy filed its posttrial motion seeking judgment notwithstanding the jury’s verdict. Our supreme court has observed that a motion for a directed verdict is a condition precedent to moving for judgment notwithstanding the verdict.[7] Because a motion for judgment notwithstanding the verdict is technically only a renewal of the motion for a directed verdict made at the close of the evidence, it cannot assert a ground not included in the motion for a directed verdict.[8] Here, although Mercy raised the contributory-negligence argument in its judgment notwithstanding the verdict motion, it failed to make the argument in its directed-verdiet motion. Therefore, the contributory-negligence argument is not preserved for our review. We next address Mercy’s point that it was entitled to judgment notwithstanding the verdict on Dr. McGraw’s claim for promissory estoppel. In its argument, Mercy contends that any promise Bosley may have made to the doctor was too indefinite and uncertain to be enforceable. It further contends that the doctor’s reliance on any such promise was | ñunreasonable in light of the doctor’s obligations under the malpractice-insurance policy and other contractual documents with Mercy. We disagree with these arguments. Our standard of review for a denial of a directed-verdict motion is well settled: [I]n reviewing the denial of a motion for [a directed verdict], we will reverse only if there is no substantial evidence to support the jury’s verdict, and the moving party is entitled to judgment as a matter of law. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. It is not our place to try issues of fact; we simply review the record for substantial evidence to support the jury’s verdict. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. A motion for directed verdict should be denied when there is conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions.[9] The same standard holds true for a motion for judgment notwithstanding the verdict.[10] A circuit court may enter a judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict and the moving party is entitled to judgment as a matter of law.[11] We defer to the jury’s resolution of the issue unless we can say there is no reasonable probability to support Dr. McGraw’s version.[12] A party asserting estoppel must prove that in good faith he relied on some act or failure to act by the other party and, in reliance on that act, suffered some detriment.[13] Whether |7there was actual reliance and whether that reliance was reasonable are questions for the trier of fact.[14] Dr. McGraw testified that, after she was served with the summons and complaint, Ann Spencer, the clinic’s office coordinator, told her that she had spoken with Cindy Bosley, the office manager at the Pea Ridge clinic, and that Bosley had instructed her to take the complaint and summons and to make a copy of the chart notes, and that per office policy they would get the complaint and summons and the chart note to Mercy’s in-house counsel. Dr. McGraw also described a meeting later that day with Bosley, Spencer, and Brenda Lee, the doctor’s nurse, in which Bosley and Spencer assured me that they would get the complaint and summons and chart notes to the in-house attorney. Cindy Bosley promised me that handling the complaint and summons would be taken care of. They both said that they were going by the office policy or the policy to handle a complaint and summons, like there was some procedure. Nurse Brenda Lee corroborated Dr. McGraw’s testimony by testifying in rebuttal that she overheard a conversation between the doctor and Ann Spencer in which Spencer told the doctor that she had just gotten off the phone with Cindy Bosley who said that this sort of thing happens all the time, don’t worry. We need to get the paperwork, meaning the summons and the chart, to our attorney so that he can take care of it. Here, Mercy argues that Bosley’s promise to “take care of’ the complaint cannot be a basis for promissory estoppel. Contrary to Mercy’s citation of cases from other jurisdictions, Arkansas case law has indicated that such a promise to “take care of’ a problem was specific 18enough to be relied on.[15] The first interrogatory asked the jury, “Do you find from a preponderance of the evidence that [Bosley] made an oral promise to [Dr. McGraw] that the lawsuit ... would be taken care of by [Mercy]?” The jury answered in the affirmative, and the trial testimony is enough to pass our substantial-evidence review of the jury’s finding. Mercy next attacks Dr. McGraw’s reliance on such a promise as being unreasonable. Mercy’s argument is that the malpractice-insurance policy provided by Mercy and the other employment documents signed by Dr. McGraw preclude such reliance. We disagree. Both Bosley and Spencer told the jury about Mercy’s process for handling lawsuits against physician employees and that the process included sending the summons and complaint to Mercy’s in-house attorney. Bosley also told the jury that she attended managers’ meetings where she was instructed on the procedures to be followed in this situation. She said that this — making sure that legal documents were forwarded to counsel — was part of her duties as office manager. Although there was testimony from Dr. Stephen Goss, the clinic president, and others that Mercy did not have a written policy for handling lawsuits filed against its doctors, they did not dispute Bosley’s testimony that this was Mercy’s procedure. Dr. McGraw testified that she relied on Bosley’s promise that the summons and complaint would be taken care of by transmitting it to Mercy’s in-house counsel, calling her reliance reasonable in light of Bos-ley’s position as administrative director of the clinic. Despite the fact that the employment documents signed by Dr. McGraw referred to the designee of | (Merc/s chief executive, no designee was ever named, thus supporting Dr. McGraw’s testimony that she viewed Bos-ley as a liaison between the physicians at the Pea Ridge clinic and Mercy’s home office. From this, the jury could find such reliance was reasonable. The insurance policy does not compel a different conclusion. Mercy had the contractual obligation to procure the malpractice-insurance policy and had the policy and all billing correspondence mailed to itself, not Dr. McGraw. Although the policy required Dr. McGraw to notify the insurance company if she was ever sued, it also allowed Mercy to contact the insurance company. Further evidence that Dr. McGraw’s reliance was reasonable is shown by the fact that, after the default judgment was entered against Dr. McGraw, Mercy assisted her in attempting to set aside the default judgment and subsequent wage garnishment. Bosley and Spencer both executed affidavits in support of the motion to set aside the default judgment. Whether a promisee’s reliance is reasonable is a question for the jury.[16] Mercy further argues that it did not hold Bosley out as having the authority to make a promise about the handling of the summons and complaint served on Dr. McGraw. In its answer to interrogatory number two, the jury unanimously found that Mercy held out Bosley as having the authority to bind it to an oral promise to take care of the lawsuit filed against Dr. McGraw. If the facts are in dispute, agency is a question of fact to be determined by the | infinder of fact.[17] It is important to keep in mind that this is not a typical agency case involving a third-party outsider. Instead, Dr. McGraw, Bosley, and Spencer were all employees of Mercy. Bosley was the office manager of Mercy’s Pea Ridge clinic, in charge of the day-to-day operations of the clinic. As discussed above, Mercy had a procedure for handling lawsuits against its physicians, albeit unwritten. Moreover, it did not disavow its “take care of it” philosophy until it became clear that the default judgment would not be- set aside. See Restatement (Second) of Agency § 26 (1958). Because we affirm the judgment based on the promissory estoppel claim, it is unnecessary for us to discuss Mercy’s arguments concerning Dr. McGraw’s claims for negligence and breach of fiduciary duty.[18] Affirmed. WALMSLEY, HARRISON, and WOOD, JJ., agree. WHITEAKER, J., concurs. HIXSON, J., dissents. . See Mercy Health Sys. of Nw. Ark. v. McGraw, 2013 Ark. App. 61, 2013 WL 361774. . See Jones v. McGraw, 374 Ark. 483, 288 S.W.3d 623 (2008); McGraw v. Jones, 367 Ark. 138, 238 S.W.3d 15 (2006). . Although the circuit court instructed the jury to answer an eighth interrogatory fixing the amount of Dr. McGraw’s damages, the parties stipulated that Dr. McGraw’s damages were the amount of the judgment entered against her, i.e., $500,000. The jury nevertheless answered the eighth interrogatory and fixed damages at $100,000. The interrogatory was signed by nine jurors. The court addressed the conflict between the percentages found by the jury in Interrogatory No. 7 and the amount of damages fixed in Interrogatory No. 8 with the jury foreperson and counsel. The jury foreperson stated that the jury’s intent was that Dr. McGraw be responsible for $100,000 of her damages. Counsel agreed to accept the verdict without sending the jury back to reconsider and resolve the conflict. . See Mercy Health Sys., supra. . Id. at 3, 2013 WL 361774. . See Little Rock Electrical Contractors, Inc. v. Okonite Co., 294 Ark. 399, 744 S.W.2d 381 (1988). Mercy also relies on the Eighth Circuit’s decision following Okonite in E.D. Smith & Sons, Ltd. v. Arkansas Glass Container Corp., 236 F.3d 920 (8th Cir.2000). . Boellner v. Clinical Study Ctrs., LLC, 2011 Ark. 83, 378 S.W.3d 745; Carr v. Nance, 2010 Ark. 497, 370 S.W.3d 826; Thomas v. Olson, 364 Ark. 444, 220 S.W.3d 627 (2005). . Boellner, supra. . Carter v. Cline, 2011 Ark. 474, at 10, 385 S.W.3d 745, 752. . See id. . See id. . Boellner, supra. . K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC, 373 Ark. 14, 30-31, 280 S.W.3d 1, 14 (2008). . Id. . Cmty. Bank of N. Ark. v. Tri-State Propane, 89 Ark.App. 272, 280, 203 S.W.3d 124, 128 (2005). . K.C. Props., supra. . Crail v. N.W. Nat’l Ins. Co., 282 Ark. 175, 666 S.W.2d 706 (1984); Reed v. Smith Steel, Inc., 77 Ark.App. 110, 78 S.W.3d 118 (2002). . The dissent raises the issue of comparative fault being applied to a cause of action for promissory estoppel. However, this is a function of how Dr. McGraw argued the case. After the verdict, she sought to have the judgment modified to reinstate the full amount of her damages as $500,000 and not reduce the award by the amount of her fault. The circuit court denied her motion as moot in the final order stating that Mercy’s motion for judgment notwithstanding the verdict had been deemed denied. Dr. McGraw did not file a notice of cross-appeal. A cross-appeal is required when the appellee seeks some affirmative relief that she failed to obtain in the trial court. See, e.g., Aycock Pontiac, Inc. v. Aycock, 335 Ark. 456, 983 S.W.2d 915 (1998); Brown v. Minor, 305 Ark. 556, 810 S.W.2d 334 (1991).