2013 Ark. App. 696

**SAFECO INSURANCE COMPANY OF ILLINOIS and Barney Travis, as Appeal from the Craighead parent and natural guardian of Dylan Travis, a minor, Appellants**

v.

**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellee.**

No. CV–13–67.

Court of Appeals of Arkansas.

Nov. 20, 2013.

Anderson, Murphy & Hopkins, L.L.P., Little Rock, by: Michael P. Vanderford, for appellants.

David A. Hodges, Little Rock, for appellee.

LARRY D. VAUGHT, Judge.

Appellants Safeco Insurance Company of Illinois and its insured Barney Travis, as parent and natural guardian of Dylan Travis (collectively appellants), appeal the September 28, 2012 order entered by the Circuit Court of Craighead County, denying their motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial. Appellants contend that the trial court erred as a matter of law in applying the intentional-acts exclusion found in an automobile insurance policy issued by appellee Southern Farm Bureau Casualty Insurance Company to its insured Virginia Hodges (Hodges). Appel-

lants also challenge the sufficiency of the evidence supporting the jury's verdict on the issue of the intentional-acts exclusion. Finally, appellants contend the trial court abused its discretion in failing to order a new trial based on allegations of jury misconduct. We affirm.

■ Hodges, Dylan's grandmother, was the owner of a 2002 Ford Explorer that was insured by Farm Bureau. On February 3, 2008, Dylan (then sixteen years old) went to Hodges's house, found her asleep, and drove her vehicle to the movies to pick up five friends. After leaving the theater, Dylan was taking one of the passengers home when they were involved in a one-vehicle accident. Two of the five passengers alleged that they sustained injuries as a result of the accident and filed a complaint for damages against Barney, as parent and guardian of Dylan.

Safeco had issued a policy of automobile liability insurance to Dylan's father, Barney, on which Dylan was listed as an additional insured. Safeco provided a defense to the Travises and made demand on Farm Bureau to assume coverage, arguing that Dylan had implied permission to drive Hodges's vehicle. In response, Farm Bureau filed a complaint for declaratory judgment against appellants, and others, seeking a declaration that Dylan was not a "covered person" as defined by the Farm Bureau policy because he did not have implied permission to operate Hodges's vehicle. Farm Bureau also argued that Dylan's conduct was excluded from coverage based on the policy's intentional-acts exclusion. After appellants filed an answer to the declaratory-judgment complaint, Farm Bureau moved for summary judgment. The trial court granted Farm Bureau's

summary-judgment motion, finding the facts undisputed that Dylan did not have implied permission from Hodges to use her vehicle. Accordingly, the trial court found that Farm Bureau owed no duty to defend or indemnify the Travises. Appellants timely appealed the order, and our court reversed and remanded in *Travis v. Southern Farm Bureau Casualty Insurance Co.*, 2010 Ark. App. 848, at 9, 378 S.W.3d 786, 790, holding that the evidence raised questions of fact as to whether Dylan had implied permission to drive Hodges's vehicle.

On remand, the case proceeded to a jury trial, where Hodges testified that she had been close to Dylan all of his life and that he visited her almost every day. She stated that Dylan knew the combination to the garage door at her house, the security code for her house alarm, and the combination to enter her vehicle, and he knew that she kept the keys to her vehicle in the console. She stated that Dylan often drove her vehicle with her permission while she was in the vehicle. Sometimes, she said, he drove her vehicle with her permission when she was not in the vehicle. But she added that she always required him to seek permission first. On the night of the accident, Hodges said that around midnight her other grandchild[1] woke her and reported that Dylan had taken her vehicle. She said that she did not talk to Dylan that night and did not give him permission—express or implied—to drive her vehicle.

Larry Speaks testified that just after midnight on February 3, 2008, he was outside smoking when he saw the headlights of a vehicle, traveling approximately

1. This grandchild was Hunter Key (Dylan's cousin), who was twelve years old at the time of the accident and lived with Hodges.

forty-five to fifty-five miles per hour,[2] reach the top of a hill, hit a bank to the left, and then tilt to the right. He said that he heard the brakes squealing and then a noise that "sounded like a stick of dynamite going off." He called 911 to report an accident and then walked over to the vehicle, which he said struck two trees.

One of the passengers in the vehicle Dylan was driving was Josh Allen, who was fourteen years old at the time. Allen said that Dylan was driving too fast and that the two girls in the vehicle were screaming at him to slow down. Allen denied any talk in the vehicle of "hilltopping," which was described at trial as approaching a hill at great speed in an effort to make one's vehicle airborne. Another passenger, Taylor Edison, testified that she remembered traveling up to 100 miles per hour and being scared. She testified that Dylan said that he had "jumped" the hill before. According to Edison, when Dylan's vehicle "jumped" the hill, the tires of the vehicle left the ground, and her head hit the ceiling of the vehicle. When they hit the ground, she said all of the tires popped, and the vehicle crashed. Jonesboro Police Officer John Baker investigated the accident. He testified that extended skid marks were left at the scene of the accident and that the impact was significant. He also said that drugs and alcohol were not contributing factors.

At the conclusion of Farm Bureau's case, appellants moved for a directed verdict. Relevant to this appeal, they argued:

> On the intentional[-]act[s] exclusion, Your Honor, the case law in Arkansas is clear that speeding in and of itself is not enough to trigger an intentional[-]acts exclusion. Here there's no evidence whatsoever that Dylan intentionally drove his car into those trees, or intentionally caused an accident.
>
> In fact, the only testimony that's been presented so far is that speed was involved and that a hill was involved and that loss of control of the vehicle occurred. That is the only evidence there is and, Your Honor—that's—that's evidence of an accident. That is not evidence of an intentional act. There's been no evidence offered at all of an intentional act before the accident itself. . . .

The trial court denied the motion.

Appellants presented the testimony of Dylan, who testified that he had a great relationship with his grandmother and saw her nearly every day. He said that Hodges never told him that he could not drive her vehicle without permission.[3]

On the night of the accident, Dylan said that Hodges was asleep when he borrowed her vehicle to pick his friends up from a movie and drive them home. On the way, Dylan said there was a dip in the road that he called a "jump spot." He said the passengers in the vehicle were telling him to drive faster as he approached the "jump spot," and "not wanting to sound like a wimp," he did. However, as he approached the dip, he "realized [he] was going way too fast and [he] knew [he] was about to lose control of the vehicle, so [he] slammed on the brakes." He admitted that the speed limit was thirty-five miles per hour and that he was exceeding that limit; however, he denied traveling faster than sixty miles per hour. He also denied trying to make the vehicle airborne and telling his passengers that he was going to

---

2. Speaks testified that the speed limit was thirty-five miles per hour.

3. Dylan's parents, Barney and LeAnn, both testified; however, their testimony focused primarily on the implied-permission issue, which is not at issue in this appeal.

jump the hill.[4] He added that he did not intend to hurt anyone and that the accident was a mistake.

At the conclusion of the evidence, appellants renewed their motion for directed verdict. Regarding the intentional-acts exclusion, they argued that there was no proof that Dylan intentionally caused the accident or intentionally did anything that resulted in the accident. They pointed to Dylan's testimony that he did not intend to cause the injuries. They argued that any intentional act, such as speeding, was abandoned by him, and the accident resulted after attempting to regain control of the car after it hit the dip. The trial court denied the renewed motion, finding that there was sufficient evidence to present to the jury as to whether the conduct that caused the accident was intentional.

The case was submitted to the jury on two interrogatories. The first dealt with the implied-permission issue, to which the jury unanimously found that Dylan had implied permission from Hodges to operate her vehicle at the time of the accident. Interrogatory No. 2 addressed the intentional-acts exclusion and provided: "Do you find from a preponderance of the evidence that the alleged bodily injury or property damage was caused by intentional acts committed by Dylan Travis in the accident on February 3, 2008." In a nine-to-three vote, the jury answered "yes."

On August 21, 2012, the trial court entered a judgment in favor of Farm Bureau. The judgment cited the jury's response to Interrogatory No. 2 and found that Farm Bureau owed no duty to defend or indemnify the Travises. Thereafter, appellants filed a motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial. This motion challenged the application of the intentional-acts exclusion and the sufficiency of the evidence supporting the jury's response to Interrogatory No. 2. This motion also raised the issue of jury misconduct. On September 28, 2012, the trial court entered an order denying the motion. Appellants timely appealed from this order.

Much of appellants' argument on appeal involves the intentional-acts exclusion found in the Farm Bureau policy of insurance, which provides:

COVERAGE EXCLUSIONS

 We will not pay for:

1. bodily injury or property damage caused by intentional acts committed by or carried out at the direction of you or any other covered person. The expected or unexpected results of these acts or directions are not covered....

The law regarding the construction of an insurance contract is well settled. Once it is determined that coverage exists,[5] it then must be determined whether the exclusionary language within the policy eliminates the coverage. *Hurst v. S. Farm Bureau Cas. Ins. Co.*, 2011 Ark. App. 657, at 2, 2011 WL 5253035. Exclusionary endorsements must adhere to the general requirement that the insurance terms be expressed in clear and unambiguous language. *Id.* If the language of the policy is unambiguous, we will give effect to the

---

4. However, at trial Dylan admitted testifying in his deposition that there was discussion in the vehicle about jumping the hill and that at least one of his passengers insisted that he jump it. He added that Edison was adamant that she did not want to "hill hop." Dylan conceded in his deposition that he had jumped a hill before.

5. Coverage under Farm Bureau's policy was found to exist based on the jury's affirmative response to Interrogatory No. 1, which asked whether Dylan had implied permission from Hodges to operate her vehicle at the time of the accident. Farm Bureau does not challenge this finding.

plain language of the policy without resorting to the rules of construction. *Id.* On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Id.* at 2–3. Whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Id.* at 3.

Appellants first argue that the trial court erred when it did not grant their directed-verdict motions because Arkansas law requires evidence of both intentional acts and intended harm to trigger the application of this intentional-acts exclusion. Appellants cite *Norris v. State Farm Fire & Casualty Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000), and *Talley v. MFA Mutual Insurance Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981), for support; however, these cases are not instructive because they do not involve the same policy exclusion at issue in the instant case.[6]

The exclusionary language found in the Farm Bureau policy herein is quite different as it expressly states that there is no coverage for bodily injury caused by intentional acts and that the expected or unexpected results of intentional acts are not covered. *S. Farm Bureau Cas. Ins. Co. v. Easter*, 345 Ark. 273, 45 S.W.3d 380 (2001), was the first Arkansas case that addressed this same exclusionary language. Appellants herein argue on appeal that "the [*Easter*] Court made clear, the insured must not only intend the act, i.e., running the stop sign, but also intend to cause the collision. The 'trigger' of the exclusion [is]

not any 'intentional' act, but rather, the intent to cause the collision." We disagree. The *Easter* court did not hold that the intentional-acts exclusion required evidence that an insured intended the acts and the results of the acts. The holding in *Easter* merely pointed out that, in the context of this particular intentional-acts exclusion, whether the insured intentionally caused the collision is a question of fact. Significantly, our supreme court contemplated the application of this exclusionary language, stating that once it has been determined that the facts support the application of the exclusion, "the remaining issue is whether the public policy of the State invalidates that exclusion." *Id.*, 45 S.W.3d at 384.

In *Hurst*, 2011 Ark. App. 657, at 4–5, 2011 WL 5253035 our court held that this same exclusion did not violate public policy. More importantly, as it relates to the instant appeal, our court held that the plain language of the exclusion is directed solely at the intentional act and not the expected or unexpected harm that resulted. *Hurst*, 2011 Ark. App. 657, at 5, 2011 WL 5253035. Therefore, based on *Hurst*, we reject appellants' argument that the trial court erred as a matter of law in refusing to grant their directed-verdict motions on the application of the intentional-acts exclusion.

Appellants also rely on *Nationwide Assurance Co. v. Lobov*, 2009 Ark. App. 385, 309 S.W.3d 227, contending that Farm Bureau's interpretation of the exclusion is untenable because it applies to any intentional act that precipitates an injury, regardless of whether it caused the injury.

---

6. In *Talley*, the exclusionary language in question stated that the policy did not cover "bodily injury ... which is either expected or intended from the stand point of the insured." *Talley*, 273 Ark. at 271, 620 S.W.2d at 261. Likewise, in *Norris*, the exclusionary language at issue provided that there was no coverage for bodily injury "which is either expected or intended by an insured; or to any person or property which is the result of wilful and malicious acts of an insured." *Norris*, 341 Ark. at 365, 16 S.W.3d at 245.

Such an interpretation, claim appellants, effectively nullifies all motor-vehicle insurance. Our holding herein is not inconsistent with our holding in *Lobov*. We first point out that the exclusionary language in *Lobov* is different than the exclusionary language in instant case. We further note that the exclusion in *Lobov* was held to be ambiguous, while the Farm Bureau exclusion has been held to be unambiguous. Where there are disputed issues of fact, *Lobov* confirms that whether the exclusion applies is to be determined by the factfinder. Therefore, we hold that the trial court did not err when it denied appellants' motions for directed verdict and submitted the issue to the jury. Appellants next argue that substantial evidence does not support the jury's finding that Dylan's intentional acts caused the accident. Our standard of review for a denial of a directed-verdict motion is well settled:

> [I]n reviewing the denial of a motion for [a directed verdict], we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. It is not our place to try issues of fact; we simply review the record for substantial evidence to support the jury's verdict. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. A motion for directed verdict should be denied when there is conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions.

*Mercy Health Sys. of Nw. Ark. v. McGraw*, 2013 Ark. App. 459, at 6, 429 S.W.3d 298, 302–03. The same standard holds true for a motion for judgment notwithstanding the verdict. *Id.* A trial court may enter a judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict and the moving party is entitled to judgment as a matter of law. *Id.*, 429 S.W.3d at 303. We defer to the jury's resolution of the issue unless we can say there is no reasonable probability to support the appellee's version. *Id.*, 429 S.W.3d at 303.

Appellants contend that the only evidence in the record supporting the jury verdict is that Dylan was speeding. And while speeding may be evidence of negligence, appellants contend it is not evidence of an intent to cause an accident. They also point out that no witness testified that Dylan intended to harm anyone or cause the accident.

In this case, the jury was not given an instruction by either party defining an intentional act. No such definition was requested or proffered. Furthermore, during deliberations, when the jury inquired about a definition of an intentional act and the trial court refused to give one, appellants did not object to the trial court's declination, and they did not request that a definition be given to the jury at that time. The only instruction given to the jury on this issue was Interrogatory No. 2, which asked: "Do you find from a preponderance of the evidence that the alleged bodily injury or property damage was caused by intentional acts committed by Dylan Travis in the accident on February 3, 2008." We hold that substantial evidence supports the jury's affirmative response to Interrogatory No. 2.

The evidence, viewed in the light most favorable to Farm Bureau, demonstrated that Dylan's intentional acts caused the accident. He was admittedly speeding on a road he described as "windy and cur-

vy." One witness said he was traveling 100 miles per hour. There was other evidence that his passengers encouraged him to drive faster, and he did; his passengers insisted that he jump the hill; Dylan admitted driving fast on the road "trying to get some sensation"; Dylan knew what "hill-topping" was and had done it before; "hill-topping" was Dylan's idea; some of his passengers screamed at him to slow down, and one of his passengers secured his seat belt as Dylan increased his speed and approached the dip/hill. This is substantial evidence on which a jury could find that Dylan's intentional acts caused the accident.

Appellants' final point on appeal is that the trial court abused its discretion when it failed to grant their motion for a new trial based on jury misconduct. Arkansas Rule of Civil Procedure 59(a)(2) provides that juror misconduct is a proper basis for granting a new trial. *Blake v. Shellstrom*, 2012 Ark. 428, at 6, 424 S.W.3d 830, 834. The decision whether to grant a new trial under Rule 59(a)(2) is discretionary with the trial judge, who will not be reversed absent an abuse of that discretion. *Blake*, 2012 Ark. 428, at 6, 424 S.W.3d at 834. The burden of proof in establishing jury misconduct is on the moving party who must demonstrate that a reasonable possibility of prejudice has resulted from the misconduct. *Id.*, 424 S.W.3d at 834. Prejudice in such instances is not presumed. *Id.*, 424 S.W.3d at 834.

Evidence of misconduct, sufficient to warrant a new trial, must be admissible under Arkansas Rule of Evidence 606(b), which is entitled "Inquiry Into Validity of Verdict or Indictment" and provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether *extraneous prejudicial information* was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

*Blake*, 2012 Ark. 428, at 6–7, 424 S.W.3d at 835 (citing Ark. R. Evid. 606(b) (2012)) (emphasis added). The purpose of Rule 606(b) is to attempt to balance the freedom of the secrecy of jury deliberations with the ability to correct an irregularity in those decisions. *Blake*, 2012 Ark. 428, at 7, 424 S.W.3d at 835. The rule discourages harassment by losing parties attempting to set aside the verdict; encourages free and open discussion among jurors; reduces incentives for jury tampering; promotes verdict finality; and maintains the viability of the jury as a judicial decision-making body. *Id.*, 424 S.W.3d at 835.

Appellants' motion for new trial relied on the affidavit of juror Bridgette Davidson. Davidson stated that the jury was unsure how to define an intentional act. She said that the jury requested a definition of an intentional act from the trial judge but did not receive one. When the jurors returned to deliberations, one juror used her smart phone to conduct a "Google" internet search for the definition of an intentional act. Davidson stated that this juror told everyone in the room what she had learned, a vote was then taken, nine jurors "voted in favor of [Farm Bureau]," and those nine jurors relied on the inter-

net definition. The trial court, in denying the motion for new trial, found that appellants failed to prove prejudice, rendering the portions of the affidavit that discussed the extraneous information inadmissible under Rule 606(b).

Appellants contend that the trial court abused its discretion in finding a lack of prejudice. They claim that the Google definition of an intentional act "irreparably tainted" the verdict and "unquestionably resulted in prejudice." While the Google internet search of the term "intentional act" is extraneous information, *see Watkins v. Taylor Seed Farms, Inc.,* 295 Ark. 291, 292–93, 748 S.W.2d 143, 144 (1988), we hold that the trial court did not abuse its discretion in finding that appellants failed to establish that the extraneous information was prejudicial as required by Rule 606(b). Notably, the definition of the term obtained from the internet and recited to the jury was not set forth in the affidavit. Thus, it is impossible to know how or if the definition could have prejudiced one party or the other. Moreover, the names of the jurors whose votes were allegedly altered *upon learning* of the internet definition of an intentional act are unknown. Therefore, it is sheer speculation on the part of Davidson to state that the jurors who "voted in favor of [Farm Bureau]" relied on the internet definition. Finally, Davidson, who also heard the internet definition, was not prejudiced by it because it did not influence her to vote with the other nine members of the jury.[7]

Because appellants failed to demonstrate that the extraneous information was prejudicial, we hold that those portions of Davidson's affidavit discussing the jury's use of the information do not fall within the exception to Rule 606(b); therefore, those portions of the affidavit are inadmissible. Without support for their motion

for new trial based on jury misconduct, we hold that the trial court did not abuse its discretion in denying the motion and affirm.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

---

7. Davidson did not sign Interrogatory No. 2.