SLIP OPINION


# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-16-73

| | |
|---|---|
| S.E. ARNOLD AND COMPANY, INC. D/B/A ARNOLD'S FLOORING AMERICA<br><br>APPELLANT<br><br>V.<br><br>CINCINNATI INSURANCE COMPANY<br><br>APPELLEE | **Opinion Delivered:** December 7, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. 60CV-15-1368]<br><br>HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant S.E. Arnold and Company, Inc., d/b/a Arnold's Flooring America (Arnold), was sued by Barry and Andrea Griffith in connection with alleged defective flooring that was supplied by Arnold and installed by a subcontractor hired by Arnold. Arnold filed a claim with its insurer, Cincinnati Insurance Company (Cincinnati), with which it had a commercial general liability (CGL) policy. Cincinnati denied coverage, citing an exclusion in Arnold's policy for "damage to your product."[1] Arnold then sued Cincinnati, claiming that the insurer owed a duty to defend and indemnify. Both parties filed motions for summary judgment. The Pulaski County Circuit Court granted Cincinnati's motion, and Arnold has appealed from that order. Arnold argues that the

---

[1]Cincinnati filed a motion asking this court to consider *Columbia Insurance Group, Inc. v. Cenark Project Management Services, Inc.*, 2016 Ark. 185, 491 S.W.3d 135, which was decided after this case had been submitted. This court granted that motion.

allegations in the underlying complaint triggered Cincinnati's duty to defend and indemnify and that no exclusions in its policy precluded coverage for faulty-workmanship claims. We affirm.

## I.      *Duty to Defend and Indemnify*

The general rule is that the allegations in the pleadings against the insured determine the insurer's duty to defend. *Murphy Oil USA, Inc. v. Unigard Security Ins. Co.*, 347 Ark. 167, 61 S.W.3d 807 (2001). The duty to defend is broader than the duty to indemnify; however, the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage. *Id.* Conversely, when there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there would be no duty to defend. *Id.*

## II.      *Factual Background*

In January 2014, Barry and Andrea Griffith paid Arnold over $78,000 to supply and install wood flooring in their residence. The Griffiths subsequently sued Arnold, alleging that "the products and services as provided" by Arnold were defective and that Arnold had breached its contract, had been negligent, and had violated applicable rules, regulations, and laws. They further alleged that the flooring "as sold and installed is subject to, contains, and is defective in multiple instances" including, but not limited to, the following:

(1) Splinters and/or slivers protrude from the surface of the floor;

(2) Cupping occurs across the width of individual pieces of flooring;

(3) Checks occur with separation of the wood across or through the annual rings;

(4) Flooring was installed in contradiction to and violation of the standards of the National Wood Flooring Association and Wood Flooring Manufactures [sic] Association;

(5) Flooring was installed in violation of applicable building codes and standards.

### III.     *Arnold's CGL Policy and Construction of Insurance Contracts*

In the "Coverages" section of Arnold's CGL policy, Cincinnati's Insuring Agreement provides that

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

. . . .

b. This insurance applies to "bodily injury" and "property damage" only if

(1) The "bodily injury" or "property damage" is caused by an "occurrence". . . .

. . . .

Arnold's CGL policy further provides that there are exclusions for

k. Damage to Your Product: "Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work: "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

. . . .

The "Definitions" section of Arnold's CGL policy provides that

3

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[2]

. . . .

20. "Property damage" means:

(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it . . . .

. . . .

25. "Your Product":

(a) Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) you; . . . and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

(b) Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.
. . .

---

[2]According to a subsequent endorsement modifying coverage under Arnold's CGL policy,

Pursuant to Ark. Code Ann. § 23-79-155,

A. The definition of "occurrence" includes faulty workmanship; and

B. The definition of "occurrence" required by this section of Arkansas law does not serve to limit or restrict the applicability of any exclusion for "bodily injury" or "property damage" under this Coverage Part.



26. "Your work":

    (1) Means:

    (2) Work or operations performed by you or on your behalf; and

    (3) Materials, parts or equipment furnished in connection with such work or operations.

(a) Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    (2) The providing of or failure to provide warnings or instructions.

The law regarding the construction of an insurance contract is well settled. *Safeco Ins. Co. of Ill. v. S. Farm Bureau Cas. Ins. Co.*, 2013 Ark. App. 696, 430 S.W.3d 815. Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates the coverage. *Id.* Exclusionary endorsements must adhere to the general requirement that the insurance terms be expressed in clear and unambiguous language. *Id.* Whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Id.* If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Id.* On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk that is plainly excluded and for which it was not paid. *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998).



IV.     *Summary-Judgment Proceedings*

Following a hearing, the trial court granted Cincinnati's motion for summary judgment and denied Arnold's countermotion.[3] The trial court granted summary judgment in favor of Cincinnati because it found that the flooring materials referenced in the Griffiths' complaint were products sold by Arnold; that Arnold's policy contained an exclusion for any property damage arising out of the insured's products; and that the Griffiths' complaint alleged damage to the flooring itself and made no reference to any other damage in the home. The trial court concluded that the damage-to-your-product exclusion applied and that Cincinnati was entitled to judgment as a matter of law. Arnold filed a timely notice of appeal to this court.

V.     *Standard of Review*

The law is well settled regarding the standard of review used by the appellate courts in reviewing a grant of summary judgment. *Dep't of Human Servs. v. Civitan Ctr.*, 2012 Ark. 40, 386 S.W.3d 432. A trial court will grant summary judgment when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id.* On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

---

[3]The trial court also disposed of all other matters, which are not relevant to this appeal.

## VI.    *Arguments*

Arnold argues that the Griffiths' complaint pointed to both products and work supplied by Arnold. Also, Arnold asserts that one of the counts in the Griffiths' complaint was for negligence, which is targeted more toward the work performed, rather than the product itself. Arnold contends that there has been no adjudication of those claims, so it is impossible to know whether the problems with the flooring were caused by a defective product or faulty workmanship. Arnold points out that the Griffiths alleged faulty workmanship, specifically related to the flooring's installation in violation of certain standards and codes. Arnold argues that the definition of "occurrence" includes faulty workmanship, which triggered coverage and Cincinnati's duty to defend and indemnify.

According to Arnold, no exclusions applied to claims of faulty workmanship.[4] Arnold points out that some of the language in the definitions of "your product" and "your work" are identical and overlap, yet the policy still includes separate definitions for these terms, meaning that an insured's product and work are separate items for purposes of the policy and, therefore, the damage-to-your-product exclusion would not bar coverage as to allegations of faulty workmanship. Also, damage that occurred to the flooring materials themselves are not subject to the damage-to-your-product exclusion because the definition of "your work" includes "materials, parts or equipment furnished in connection with such

---

[4]Arnold maintains that the damage-to-your-work exclusion was inapplicable because Arnold employed a subcontractor to install the flooring and that there is an exception for damages arising from work performed by subcontractors. Cincinnati, however, never asserted that this exclusion applied in denying coverage, so no in-depth discussion of that exclusion is necessary.

 

work or operations." According to Arnold, "materials" thus cannot be a synonym for "your product." Arnold contends that, at the very least, this conflicting and overlapping language demonstrates an ambiguity that created a genuine issue of material fact.[5]

## VII.    *Discussion*

Our supreme court cited with approval a case from the Wisconsin Supreme Court, *American Family Mutual Insurance Company v. American Girl, Inc.*, 673 N.W.2d 65 (Wis. 2004), which employed a three-step analysis for evaluating coverage in CGL policies. *See Columbia Ins. Grp., Inc. v. Cenark Project Mgmt. Servs., Inc.*, 2016 Ark. 185, at 6, 491 S.W.3d 135, 138–39. The court in *American Family* stated,

> First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. If the claim triggers the initial grant of coverage in the insuring agreement, we next examine the various exclusions to see whether any of them preclude coverage of the present claim. Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain. We analyze each exclusion separately; the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it. Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage. An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies.

*Am. Family Mut. Ins. Co.*, 673 N.W.2d at 73 (citations omitted).

---

[5]In its reply brief, Arnold offers the possibility that the installed floors were incorporated into the structure and could be considered part of the real property. Arnold asserts that this is a "real estate exception," meaning that the damage-to-your-product exclusion would not apply. This court does not consider arguments raised for the first time in a reply brief. *Orintas v. Point Lookout Prop. Owners Ass'n Bd. of Dir.*, 2015 Ark. App. 648, 476 S.W.3d 174.

No one disputes that faulty workmanship is an "occurrence." *See* Ark. Code Ann. § 23-79-155 (Supp. 2015). The parties appear to agree that the insuring language in Arnold's CGL policy was triggered. Although the Griffiths complained about the installation of the flooring, which could be considered faulty workmanship, the only resulting damage alleged in the complaint was to the flooring itself, which was a product admittedly sold by Arnold. We hold that there was no uncertainty as to the effect of the damage-to-your-product exclusion—it excluded coverage for property damage to Arnold's product arising out of it or any part of it.[6]

The Eighth Circuit Court of Appeals has held that the purpose of the damage-to-your-product exclusion is to prevent the insured from using its products-liability coverage as a form of property insurance to cover the cost of repairing or replacing its own defective products or work. *Netherlands Ins. Co. v. Main St. Ingredients, LLC*, 745 F.3d 909 (8th Cir. 2014). Cincinnati's counsel provided the following example during his argument at the summary-judgment proceedings. A roofing company sold defective shingles to a consumer. When the consumer's roof leaked, the water damaged the carpet and drapes in the consumer's home. While the latter damage would be covered by the roofing company's CGL policy, the insurer would not be obligated to replace the roof under the damage-to-your-product exclusion. The trial judge offered his own example related to Arnold's CGL

---

[6]According to Arnold, the "conflicting and overlapping" language of the policy demonstrated the existence of an ambiguity, which created a genuine issue of material fact to be litigated. While the determination of what an ambiguous term in a contract means is a question for the fact-finder, the initial and predicate determination of whether an ambiguity exists is a question of law. *Singh v. Riley's, Inc.*, 46 Ark. App. 223, 878 S.W.2d 422 (1994). The trial court found no ambiguity in the policy's terms, and we cannot say that its determination was incorrect.

policy. If the cupping of the Griffiths' flooring had resulted in someone tripping and bumping his or her head, that bodily injury, like property damage, would have been covered because it was damage to something other than Arnold's product.

The Griffiths alleged no damages beyond damage to Arnold's own product, which was the flooring itself. The damage-to-your-product exclusion applied and thus precluded coverage, regardless of the inapplicability of the damage-to-your-work exclusion. We conclude that there was no possibility that the damages alleged by the Griffiths would have been covered by Arnold's CGL policy in light of the damage-to-your-product exclusion; therefore, Cincinnati had no duty to defend or indemnify. Granting summary judgment in favor of Cincinnati was appropriate under these circumstances, and we thus must affirm the trial court's decision.

Affirmed.

GLOVER and WHITEAKER, JJ., agree.

*David A. Hodges*, for appellant.

*Barber Law Firm PLLC*, by: *Scott M. Strauss* and *Carolyn T. Harder*, for appellee.